William Archibald Hedrick v. Commissioner.
Hedrick v. Commissioner
Docket No. 4528.
United States Tax Court
1945 Tax Ct. Memo LEXIS 187; 4 T.C.M. (CCH) 536; T.C.M. (RIA) 45179; May 21, 1945
*187 David H. Jassy, Esq., for the petitioner. William F. Evans, Esq., for the respondent. SMITH Memorandum Opinion SMITH, Judge: This proceeding involves a deficiency in income tax of $212.01 for 1941. Petitioner contests such part of the deficiency as results from the inclusion in gross income of additional compensation which he was entitled to receive upon retirement but which he claims to have refused to receive. [The Facts] Petitioner is a resident of New York, N. Y. He filed his income tax return for 1941 with the collector of internal revenue for the second district of New York. At the beginning of the taxable year 1941 petitioner was employed by the New York Telephone Company at a salary of $45 per week. On or about June 10 of that year he received notice that he was eligible for retirement and that his active employment with the company would terminate as of that date. He was then 57 years of age. Petitioner was told that he was eligible for retirement pay under an employees' pension plan then in operation and was furnished a form on which to make application for such retirement pay. However, petitioner refused to sign the application and told one of *188 the company officials that he did not want to retire at his age and would not accept any pension. He thought that by accepting pension benefits he might be barred from other employment. He sought reinstatement to active duty with the Telephone Company but was unsuccessful. Since that time he has been employed by other concerns and according to his testimony has "done fairly well." In his return for 1941 petitioner reported salary from the Telephone Company of $1,170 which the respondent has increased to $1,773. Frank M. Downey an employee of the Telephone Company who is secretary of the company's Employees' Pension Committee, testified that in June, 1941, the company had in operation a plan under which a retired employee was given three month "preretirement leave" with pay and that checks for approximately $603, or three months pay, were sent to the petitioner in 1941 after he was removed from active service. He further testified that pension checks were still being sent to the petitioner under a pension plan put into effect soon after petitioner left the company. Petitioner testified, when asked by respondent's counsel whether he received checks for $603 in addition to the $1,170 *189 which he reported: "A. I can't dispute it and I can't do anything about it, I don't know, I can't even tabulate it as an estimate. I can estimate it reasonably close, but I have nothing to do with them." The burden of petitioner's testimony was that while he may have received checks from the Telephone Company for the additional compensation which the respondent has included in his gross income, he has never accepted or cashed the checks and has at all times disclaimed any intention of doing so. He testified that he had never returned any of the pension checks to the Telephone Company, or to the issuing bank which acted as agent for the company in handling the pension trust and that he still had some of the checks in his possession. He did not know how many of the checks he still has or what has become of the others. On these facts we can not find that the respondent erred in adding the amount of $603 to petitioner's reported compensation for 1941. Petitioner's only protest against the determination is that he did not accept or receive the amount in dispute, or at least such portion as was covered by the pension checks. In ; affd. (C. *190 C.A., 9th Cir.), , we held that the taxpayer was not taxable on additional compensation which had been voted to him by a corporation of which he was an officer and stockholder where he had refused to accept such compensation and where, at the corporation's election, it was paid over to the University of California. We said in our opinion: It is elemental that an individual may refuse to enforce a right, forswear a debt due him, or relinquish a claim. After such action it is equally basic that his debtor retains full possession and ownership of the thing renounced. It is obvious also that no one is compelled to accept compensation or payment for services or goods. When he refuses to do so he can not be charged with the amount so refused and abandoned, as an item of income. Under no theory of constructive receipt can it be compensation within the meaning and definition of income. That case would appear to be controlling here if, as petitioner contends, he had completely and finally refused to accept the additional compensation with which the respondent has charged him. However, the evidence is that while petitioner has refused to cash any of the pension *191 checks he still has some of them in his possession and is free to cash them at any time he chooses. We do not know the amount of those checks. All of the pension funds to which petitioner is entitled are held by the trust company as agent for the Telephone Company, subject to whatever disposition the petitioner wants to make of them. There is no certainty that petitioner will not change his mind about cashing the checks. The important consideration is that he is still in a position to do so and, of his own volition, can draw down the funds whenever he chooses. If he should die that right presumably would pass to his estate. On these facts we must sustain the respondent's determination. Decision will be entered for the respondent.